# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20425

United States Court of Appeals
Fifth Circuit

**FILED**

September 4, 2014

Lyle W. Cayce
Clerk

TIMOTHY TIELKE; MELISSA ANN TIELKE,

Plaintiff-Appellants

v.

BANK OF AMERICA, N.A., successor to BAC Home Loans Servicing, LP,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-2

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

This dispute involves assertions by Defendant Bank of America that the homeowners, Plaintiffs Timothy and Melissa Ann Tielke, were in default of their mortgage obligations because they failed to make required mortgage payments and failed to maintain homeowners insurance. The Tielkes brought this suit against the bank, raising one claim under the Texas Debt Collection Act (TDCA) and one claim for breach of contract. The district court granted summary judgment in favor of the bank. We conclude that there are fact issues

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20425

concerning whether or not Plaintiffs maintained homeowners insurance and whether they were in default of their mortgage payments. Summary judgment was therefore inappropriate, and we REVERSE the district court's judgment.

**I.**

The Tielkes obtained a home equity mortgage on property located in Sugar Land, Texas, in 2003. The loan was originally serviced by Countrywide Home Loans and then eventually by Defendant Bank of America. The Tielkes filed for Chapter 13 bankruptcy protection in November 2004. According to the complaint, they were required by the bankruptcy plan to make their regular monthly mortgage payments of approximately $670 plus an additional amount of $37 to cure an arrearage of $2080. They were discharged from bankruptcy in April 2011.

The Tielkes alleged in their complaint that they have been plagued by accounting errors by the loan servicers for many years. They alleged that in July 2011, Bank of America obtained lender's forced homeowners' insurance on the property even though they maintained homeowners' insurance. They also alleged that because of the forced homeowners' insurance the bank re-calculated their mortgage payment to be approximately $1450, which included an escrow amount for the insurance. The Tielkes continued to make only their regular payments of $670, however, thereby apparently causing a shortfall. The Tielkes further alleged that in June 2011, Bank of America began making harassing collection calls to them, and they submitted an affidavit averring that the calls numbered as many as seven to nine calls per day for several months. They filed the instant suit, alleging that (1) Bank of America's repeated and harassing collection calls violated the TDCA, and (2) Bank of America breached the escrow agreement by obtaining forced homeowners' insurance when coverage already existed and by paying property taxes out of sequence, thereby causing an escrow shortage of over $5000. They sought

No. 13-20425

statutory damages, actual damages, and damages for mental anguish. The district court, largely by adopting Bank of America's pleadings, granted summary judgment for the bank. The Tielkes now appeal.

## II.

We review the grant of summary judgment de novo, viewing all of the record evidence in a light most favorable to, and drawing all reasonable inferences in favor of, the non-moving party. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Bank of America argues, and the district court apparently held, that summary judgment was proper because the undisputed evidence showed that the Tielkes were in default of their mortgage obligations, and that as a result the Tielkes' claims fail. With respect to the TDCA claim, the bank asserts that because of the Tielkes' default, the bank was permitted to make collection calls to the Tielkes. It also argues that the Tielkes presented no evidence that there were six to nine calls per day and no evidence that any calls were made with an intent to harass. With respect to the claim for breach of the escrow agreement, the bank asserts that the Tielkes' default on their mortgage payments precludes them as a matter of law from making a breach of contract claim. *See Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (holding that a party who is himself in default cannot assert a claim for breach of contract against the other party). The bank argues that the Tielkes failed to make their July 2011 mortgage payment and have made no other payments since then. It also asserts that on numerous occasions the Tielkes failed to provide timely evidence of the necessary homeowners' insurance. At bottom, therefore, this

3

No. 13-20425

case turns on whether the Tielkes were in default of their mortgage, either by failing to make payments or failing to maintain insurance, thereby permitting Bank of America to act as it did. A review of the summary judgment evidence does not resolve this question, however, and fact issues remain.

As noted above, the evidence included an affidavit from Mrs. Tielke averring to the bank's collection efforts, including the alleged numerous harassing telephone calls. The bank responds that in addition to failing to make their July 2011 mortgage payment, or any payments since that time, the Tielkes have a history of delinquency that dates back to August 2004. The Tielkes maintain, however, that they have made payments but that Bank of America has consistently misapplied them.

We have examined a loan history statement produced by Bank of America (Defendant's Exh. A-3), which does appear to reflect missing or sporadic mortgage payments by the Tielkes dating back to 2004. Beyond that, however, we are unable to decipher this document with any certainty, and we note that any irregular payment history largely predates the Tielkes' emergence from Chapter 13 bankruptcy protection in April 2011.

The record shows that on June 6, 2011, Bank of America sent the Tielkes a notice of default indicating that as of April 1, 2011, the Tielkes were delinquent in the amount of $2011.89 plus late charges. The Tielkes dispute the delinquency. How the bank arrived at this delinquency amount is not clear from the record, and neither the district court's opinion nor the bank on appeal explains it.[1] Equally unclear is how the Tielkes allegedly came to be over

---

[1] The amount is equivalent to approximately three months' worth of the Tielkes' regular mortgage payments ($670.62 x 3 = $2011.86). We note that Melissa Ann Tielke averred in an affidavit that in 2007 Countrywide had sent the Tielkes notice of an arrearage of an identical amount, but she averred that the Tielkes paid it. It is not clear from the record whether the amount claimed by Bank of America on June 6, 2011, was the same arrearage claimed by Countrywide in 2007.

$2000 in arrears if they had just been released from bankruptcy, which had included a plan to cover arrearages. In any event, the Tielkes submitted copies of checks written to the bank for $670 on June 16, July 26, and August 29, 2011. These checks would appear to show there was no delinquency (other than perhaps for late charges), but the bank responds that the payments from those checks were applied for delinquencies that already existed on payments due in April, May, and June 2011. However, Defendant's Exh. A-3 appears to show that payments designated as "regular payments" were posted to the Tielkes' account on January 3, February 17, March 2, March 28, May 10, May 20, and June 17, 2011. It is therefore unclear whether or how the Tielkes were delinquent on June 6 for payments due in April, May, and June 2011, and Bank of America is no help in explaining it.[2]

We surmise that the forced homeowners' insurance may have something to do with the bank's view that the Tielkes were in default. The Tielkes' alleged that Bank of America obtained forced homeowners' insurance and then erroneously required them to pay into an escrow account for insurance despite the fact that they already had homeowners' insurance. Bank of America denies that it actually obtained an insurance *policy*, but it does not deny that there was an increase in the mortgage payment to cover an insurance *escrow*. Therefore, it may be that any payments by the Tielkes that did not include the insurance escrow were deemed by the bank to be insufficient and the cause of a default. But the bank does not say so, and we are stymied in our effort to understand the cause of the Tielkes' alleged default, if indeed they ever were in default.

---

[2] The Tielkes also made monthly payments of $670 by checks dated October 6, November 6, and December 12, 2011, and January 11 and March 26, 2012. These checks were either returned to the Tielkes or placed in a suspense account because the bank viewed them as insufficient to cure the default, but the propriety of that view depends on whether there was a valid default in the first place.

No. 13-20425

In the district court, Bank of America produced its own internal records purporting to show that on numerous occasions it received notice from the Tielkes' insurance carrier stating that the homeowners' insurance had lapsed due to nonpayment. It also produced letters that Bank of America sent to the Tielkes notifying them of this deficiency. Bank of America concedes in its appellate brief, however, that each time it sent letters to the Tielkes, they allegedly reinstated their homeowners' insurance and that the bank therefore never obtained the insurance. Moreover, in the district court, the Tielkes' submitted evidence from their insurance carriers showing that there had never been a lapse in coverage. There are fact issues, therefore, as to whether the Tielkes' homeowners' insurance ever lapsed, whether the bank ever did require an escrow amount for insurance, and if so, whether the escrow was justified.[3]

The Tielkes claim that the unjustified escrow amount for homeowners' insurance was the cause of the dispute between the parties, and we cannot say on this record that they are wrong. There are simply too many unanswered questions about the homeowners insurance, the Tielkes' mortgage payments, and the bank's application of the payments to justify summary judgment in

---

[3] The Tielkes' Home Equity Security Instrument (First Lien) provided for an escrow for insurance, but it also provided that the bank could waive that requirement, and at the loan's inception the lender did not apparently require an escrow for insurance. *See* Defendant's Exh. A-2 ¶ 3. The Lien did further provide that the lender could revoke the waiver at any time and thereby require the borrower to establish an escrow account, but the Lien also required written notice of the revocation to be given to the borrower. *Id.* Although we express no opinion on the matter, Bank of America at least arguably could have required that an escrow amount for insurance be established if the Tielkes did repeatedly allow their homeowners insurance to lapse only to then reinstate the insurance once they were notified of the deficiency by the bank. But no party has addressed whether Bank of America ever did waive the requirement for an escrow amount, or whether, if so, it properly gave written notice of a subsequent revocation. And, other than Bank of America's internal file notes, there is no evidence of the alleged notices of insurance lapse that the bank claims to have received. All of this, in conjunction with the Tielkes' evidence that the insurance never lapsed, adds to the confusion of this case and the fact issues it presents.

No. 13-20425

this case at this time.  The district court's judgment must therefore be reversed and the cause remanded for further proceedings.

REVERSED and REMANDED.